UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XZAVR MOORE,<br><br>    Plaintiff,<br><br>v.<br><br>C. GRIECO, et al.,<br><br>    Defendants. | Case No. 1:18-cv-00601-LJO-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES BE GRANTED AND PLAINTIFF'S CASE DISMISSED WITHOUT PREJUDICE<br><br>OBJECTIONS, IF ANY, DUE WITHIN 21 DAYS<br><br>(ECF NO. 43) |

    Plaintiff Xzavr Moore aka Amber Moore ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983 against Defendant C. Grieco ("Defendant") for First Amendment retaliation.

    On September 27, 2019, Defendant filed a motion for summary judgment, arguing that Plaintiff failed to exhaust available administrative remedies prior to filing suit. (ECF No. 43.) For the reasons that follow, the Court recommends that Defendant's motion for summary judgment be granted and that Plaintiff's case be dismissed without prejudice for failure to exhaust available administrative remedies prior to filing suit.

///

///

1

**I.   BACKGROUND**

    **a. Procedural Background**

Plaintiff originally filed this suit against Correctional Officers S. Torres, M. Quandt, and D. Glazner. (ECF No. 1.) Plaintiff alleged that S. Torres and M. Quandt filed a false rules violation report against him, and that D. Glazner, as hearing officer for the false disciplinary report, was biased against him.[1]

On August 21, 2018, the Court screened the Complaint and found that it stated a claim against Defendant D. Glazner for violation of Plaintiff's procedural due process rights under the Fourteenth Amendment but failed to state any other claims. (ECF No. 9.)

On September 11, 2018, Plaintiff filed a First Amended Complaint. (ECF No. 12.) Upon screening, the Court found that Plaintiff stated a claim against Defendant for First Amendment retaliation. More specifically, Plaintiff claims that Defendant filed a false rules violation report against him in retaliation for the filing of this lawsuit.

Defendant answered the First Amended Complaint on April 11, 2019. (ECF No. 28.) Defendant's answer contained an affirmative defense stating that Plaintiff failed to properly exhaust administrative remedies prior to filing the First Amended Complaint.

On September 27, 2019, Defendant filed a motion for summary judgment based on Plaintiff's failure to exhaust available administrative remedies. (ECF No. 43.) Plaintiff filed an opposition on November 6, 2019. (ECF No. 45.) Defendant filed a reply on November 13, 2019. (ECF No. 46.)

    **b. Factual Background Related to Exhaustion Defense**

Defendant submits the Declaration of J. Thissen, the Appeals Coordinator at the Central California Women's Facility ("CCWF"), where Plaintiff is an inmate. Thissen is responsible for screening, logging, and processing non-healthcare related appeals submitted by inmates at CCWF. Thissen explains that the CCWF maintains a record of submitted inmate grievances filed at the institution and an electronic database for tracking said grievances. Thissen's office

---

[1] The Court notes that, at the scheduling conference, Plaintiff asked to be referred to as "Ms. Moore." However, in briefing, Plaintiff uses masculine pronouns when referring to himself. *See* (ECF No. 45, p. 3.) Accordingly, the Court uses masculine pronouns when referring to Plaintiff.

conducted a search for grievances submitted by Plaintiff, particularly those accepted on or after July 1, 2018, (the date of Defendant's alleged misconduct) through September 11, 2018 (the date Plaintiff filed his First Amended Complaint). In addition, Thissen's office researched systems files related to the following: allegations that Defendant, on July 1, 2018, retaliated against and/or made false accusations against Plaintiff. The search revealed that Plaintiff filed one grievance accepted for first or second level review between July 1, 2018 and September 11, 2018, which was grievance no. CCWF-18-02585 (sometimes referred to herein as "the grievance" or "CCWF-18-02585"). Plaintiff submitted the grievance on August 26, 2018. The grievance addressed an incident that occurred on July 1, 2018, in which Defendant allegedly issued a false rules violation report against Plaintiff. The first level of review for the grievance was bypassed. The grievance was granted in part and denied in part at the second level of review on October 2, 2018. The second level review indicated that all issues were adequately addressed, and that institutional staff did not violate CDCR policy with respect to one or more of the issues appealed.

Defendant attaches authenticated copies of Plaintiff's August 26, 2018 grievance, as well as the second level response issued on October 2, 2018, to Thissen's Declaration.

Defendant also submits the Declaration of J. Spaich, the Acting Chief of the Office of Appeals ("OOA"). Spaich explains that the OOA receives, reviews, and maintains non-healthcare inmate grievances submitted for third level review, which is the final stage of review in the CDCR's inmate grievance process. Spaich explains that the OOA keeps an electronic record of each inmate grievance that has proceeded through to the third and final level of review.

The OOA searched system files for any and all third level inmate grievances submitted by Plaintiff and accepted on or after July 1, 2018, and completed through September 11, 2018, in which Plaintiff complained about Defendant. In addition, the OOA researched system files related to the following: allegations that Defendant, on July 1, 2018, retaliated against and/or made false allegations against Plaintiff. Based on those parameters, a search of OOA records revealed that Plaintiff did not submit an appeal for third level review between July 1, 2018 and September 11, 2018.

According to Spaich, the OOA received Plaintiff's request for third level review of

CCFW-18-02585 on October 24, 2018. On February 14, 2019, CCFW-18-02585 was cancelled in accordance with California Code of Regulations, Title 15, section 3084.6 because Plaintiff failed to file the grievance within thirty days of the pertinent incident or conduct as mandated by California Code of Regulations, Title 15, section 3084.6, even though he had the opportunity to do so. Spaich further declares that, although Plaintiff was afforded a decision at the Second Level of Review, California Code of Regulations, Title 15, section 3084.6(a)(5) states, "[e]rroneous acceptance of an appeal at the lower level does not preclude the next level of review from taking appropriate actions, including rejections and cancellation of appeal." Plaintiff was advised that a separate appeal could be filed regarding the cancellation decision. Plaintiff was further advised that the original appeal could only be resubmitted if the appeal of the cancellation was granted.

There is, however, some confusion regarding the third level review of Plaintiff's grievance. Plaintiff maintains that he submitted the grievance for third level review on October 18, 2018 and requested an update as to the status of the third level review on February 28, 2019, as he had still not received a response by that date. On March 5, 2019, Plaintiff received a response that the "appeal was granted in part and returned to you via institutional mail on 10/11/18." Plaintiff also received another package from the "Chief of Appeals Office" which appears to have contained a copy of the February 14, 2019 cancellation decision, as well as a letter from another inmate, Denell Cavers addressed to the "Chief Inmate Appeals Branch, CDCR." (ECF No. 45. p. 1 & Exhibit B.) Mr. Cavers's letter states that "on 2-25-19 I received my third level response and this 602 was attached to my 602. I'm sending it back so it can be mailed to the right person." It is unclear on what day Plaintiff received this package; it is also unclear what 602 document Mr. Cavers is referencing.

Plaintiff then, in contravention to the instructions accompanying the February 14, 2019 cancellation, re-submitted CCFW-18-02585 for third level review on March 4, 2019. According to Spaich, Plaintiff also attached a copy of what appears to be Mr. Caver's February 26, 2019 letter. It was determined that Plaintiff was attempting to submit an appeal that had been previously cancelled in violation of the CDCR rules. Thus, on April 15, 2019, CCFW-18-02585 was screened out and not accepted for third level review.

4

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the moving party will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremkin v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the moving party meets this initial burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1125 (E.D. Cal. 2006) (quoting *Celotex Corp*, 477 U.S. at 324). The evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "[T]he judge's function is not [her]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) (quoting *Anderson*, 477 U.S. at 249).

### B. Exhaustion of Administrative Remedies Under the Prison Litigation Reform Act

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1007e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516,

524 (2002). Exhaustion is a prerequisite for all prisoner suits regarding conditions of confinement, whether they involve general circumstances or particular episodes, and whether they involve excessive force or some other wrong. *Porter*, 534 U.S. at 532.

Proper exhaustion of available remedies is mandatory. *Booth v. Churner*, 532 U.S. 731, 741 (2001). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 95-96 (2006). For a remedy to be available, there must be the "possibility of some relief…" *Booth*, 532 U.S. at 738. Relying on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005)

Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204 (2007). To carry this burden:

> A defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case…

*Brown*, 422 F.3d at 936-37.

Defendant bears the burden of proving that there was an available administrative remedy, and that the prisoner did not exhaust it prior to filing the lawsuit. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Once defendant meets the burden, the burden shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

**C. CDCR Exhaustion Procedures**

Recently, United States Magistrate Judge Kendall J. Newman set forth the California Department of Corrections and Rehabilitation ("CDCR") administrative appeal process in detail:

> The California Department of Corrections and Rehabilitation ("CDCR") provides inmates the right to appeal administratively "any policy, decision, action,

6

condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, and welfare." Cal.Code Regs. tit. § 15 § 3084.1(a). Following amendments that took effect January 28, 2011, California prisoners are required to proceed through three levels of appeal to exhaust the administrative appeal process: (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the CDCR. *See* 15 Cal.Code Regs. § 3084.1-3084.9. A final decision from the Director's level of review satisfies the exhaustion requirement under 42 U.S.C. § 1997e(a). *See Lira v. Herrera*, 427 F.3d 1164, 1166-67 (9th Cir. 2005); *see also* Cal.Code Regs. tit. 15, § 3084.7(d)(3) (as amended Dec. 13, 2010).

To initiate an appeal, the inmate must submit a CDCR Form 602 describing the issue to be appealed and the relief requested to the appeals coordinator's office at the institution. *Id.* § 3084.2(a)-(c). An inmate must submit the appeal within 30 calendar days of: (1) the occurrence of the event or decision being appealed; or (2) first having knowledge of the action or decision being appealed; or (3) receiving an unsatisfactory departmental response to an appeal. *Id.* § 3084.8(b). Specific time limits apply to the processing of each administrative appeal. *See* Cal.Code Regs. tit. 15, § 3084.8. Absent any specific exceptions, the first and second level administrative responses are required to be completed "within 30 working days from [the] date of receipt by the appeals coordinator," and a third level response is due within 60 working days from the date the appeal is received by the appeals chief. *Id.*

…

An appeal may be cancelled if it is untimely. Cal.Code Regs. tit. 15, § 3084.6(c)(4). However, if the issue is ongoing, the inmate may appeal any time during the duration of the event. *Id.* § 3084.5(b)(3). Once cancelled, the appeal shall not be accepted unless a determination is made that the cancellation was made in error or new information is received. *Id.* §§ 3084.6(e), 3084.6(a)(3). A "cancellation or rejection" of an appeal "does not exhaust administrative remedies." *Id.* §§ 3084.1(b); 3084.6.

An inmate can appeal a cancellation decision separately by appealing the application of § 3084.6(c) to his appeal; if he prevails on that separate appeal, the cancelled appeal later can be considered at the discretion of the appeals coordinator or the third level appeals chief. *Id.* §§ 3084.6(a)(3), 3084.6(e).

*Vaughn v. Hood*, 2015 WL 5020691 at *3-4 (E.D. Cal. Aug. 21, 2015), *affirmed by* 670 Fed.App'x 962 (9th Cir. 2016).

### III. ANALYSIS

The Court finds that Defendant has shown available administrative remedies that Plaintiff failed to properly exhaust under the PLRA before filing his suit. It is undisputed that Plaintiff did not even seek a third level review of the grievance until October 18, 2018. However, Plaintiff filed the First Amended Complaint on September 11, 2018—over a month before he even filed for third level review of the grievance. Because the PLRA requires *complete* exhaustion of a grievance prior to filing suit, and because it is undisputed that Plaintiff did not completely exhaust

his claim prior to filing suit, Plaintiff has failed to properly exhaust his claim. *See Kenner v. W.I.N.G.S. Sup'r*, 331 Fed.Appx. 483, 484 (9th Cir. 2009) ("The district court properly dismissed the action because [plaintiff] did not complete the prison grievance process prior to filing suit."); *McKinney v. Carey*, 311 F.3d 1198, 1199-1200 (9th Cir. 2002) (requiring dismissal without prejudice where a prisoner "d[oes] not exhaust his administrative remedies prior to filing suit but is in the process of doing so when a motion to dismiss is filed").

Accordingly, the Court finds that Defendant has shown administrative remedies were available that Plaintiff failed to exhaust before filing this suit. The burden shifts to Plaintiff to show these administrative remedies were unavailable to him.

Plaintiff's central argument for unavailability focuses on a package he claims to have received from the OOA which contained a letter from inmate Denell Caver to the CDCR Chief of Appeals Office dated February 26, 2019, over five months after Plaintiff filed this lawsuit. In the letter, Mr. Caver claimed that he had been sent a copy of another inmate's grievance and wanted to ensure that it was sent to the proper party. The grievance Mr. Caver received was apparently Plaintiff's, although, this is not entirely clear from the evidence Plaintiff submitted. Plaintiff claims that this letter shows the "CDCR Appeals Office purposely sent the appeal to him…in order to delay the Plaintiff's time constraints." (ECF No. 45, p. 3.)

The Court finds that this letter, although confusing, does not raise an issue of fact as the availability of administrative remedies at the time this lawsuit was filed. As the Court understands Plaintiff's argument, he is contending that the CDCR purposely misdirected his request for third-level review to another inmate so that the appeal would be rendered untimely under the CDCR regulations. However, the Court finds that the letter does not explain Plaintiff's failure to completely exhaust the grievance prior to filing suit or otherwise demonstrate administrative remedies were unavailable at the time Plaintiff filed suit.[2]

---

[2] Moreover, Defendant does not contest the timeliness of the third level submission and admits that Plaintiff's grievance was received for third level review on October 24, 2018. Instead, Defendant argues that Plaintiff's *initial* submission of the grievance on August 26, 2018, was untimely under the CDCR regulations. And Plaintiff does not, as far as the Court can tell, dispute that he initially filed the grievance on August 26, 2018. The February 26, 2019 letter has no bearing on the initial timeliness of the grievance, although, as noted above, this is not the reason the Court recommends summary judgment.

For these reasons, Plaintiff has failed to show that the administrative remedies he failed to exhaust at the time of filing the lawsuit were unavailable to him when the lawsuit was filed, and summary judgment is appropriate.

Because it is undisputed that Plaintiff failed to exhaust available administrative remedies prior to filing this lawsuit, as the lawsuit was filed shortly after Plaintiff's initial grievance was filed and before even a second level response had been received, Defendant's motion for summary judgment should be granted.

Defendant's motion also argues that summary judgment is appropriate because Plaintiff never exhausted available administrative remedies, even after the lawsuit was filed, because Plaintiff's initially untimely grievance was rejected at the third level, even though it had been accepted at the second level. Defendant relies on Title 15, section 3084 6(a)(5), which states, "erroneous acceptance of an appeal at the lower level does not preclude the next level of review from taking appropriate actions, including rejections and cancellations of appeal."

The Court need not reach this issue because it is undisputed that Plaintiff did not exhaust available remedies prior to filing this lawsuit, as described above. Nevertheless, the Court notes that at least one other judge within this district has granted summary judgment based upon a failure to exhaust where the prisoner's initial grievance, though untimely, was accepted for second level review before ultimately being cancelled at the third level. *See Vaughn*, 2015 WL 5020691 at *8, *affirmed by* 670 Fed.App'x 962 (9th Cir. 2016) (dismissing action for failure to properly exhaust where prison initially erroneously accepted untimely grievance and then corrected this mistake by cancelling grievance at third level of review).[3]

---

[3] Finally, Plaintiff contends that it was inappropriate for the OOA to cancel CCWF-18-02585 on the ground that it was duplicative of another grievance he had filed—CCWF-17-02489. It is worth noting that the undisputed evidence shows that CCWF-18-0285 was *not* cancelled because it was a duplicate. Rather, CCFW-18-02585 was initially cancelled because it was untimely. Plaintiff then re-submitted CCWF-18-02585 for third level review of March 4, 2019. Upon receipt of the re-submitted grievance, the OOA determined that Plaintiff was attempting to submit an appeal that had been previously canceled in violation of CDCR regulations. Thus, on April 15, 2019, the appeal was screened out and not accepted for third level review. The undisputed evidence shows that neither cancellation of CCWF-18-02585 had anything to do with the prior grievance Plaintiff had filed, CCWF-17-02489. Plaintiff's mistaken belief that CCFW-18-02585 was erroneously screened out as a duplicate does not establish unavailability of administrative remedies at the time this lawsuit was filed.

9

## IV. CONCLUSION

Accordingly, based on the foregoing, the Court HEREBY RECOMENDS as follows:

1. That Defendant's Motion for Summary Judgment (ECF No. 43.) be granted and that Plaintiff's claim be dismissed without prejudice; and

2. That the Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 6, 2020**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE